E. A. ROBERTS AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 80697. Promulgated September 22, 1937.

*George E. H. Goodner, Esq.*, for the petitioners.
*E. A. Tonjes, Esq.*, for the respondent.

550

OPINION.

TYSON: The respondent contends that the transfer of the 90 shares of Steamship Co. stock was not a bona fide sale made in an arm's length transaction in good faith, but was instead a mere manipulation of property entered into for the sole purpose of reducing tax liability and to defeat the collection of taxes legally due.

It has been stated that "while a sale for tax purposes is not to be disregarded because of its motive, on the other hand a mere gesture, without the vital intent to change ownership is not to be recognized as a sale merely because superficially it resembles one." *Luella Hoyt Slayton*, 29 B. T. A. 931; affd., *Slayton* v. *Commissioner*, 76 Fed. (2d) 497; certiorari denied, 296 U. S. 286. However, where there is an absolute sale, such sale is not invalid merely because made, as was the sale of the 90 shares of Steamship Co. stock here involved, with the purpose of reducing Federal income taxes. *Helvering* v. *Gregory*, 69 Fed. (2d) 809; affd., *Gregory* v. *Helvering*, 293 U. S. 465; *Commissioner* v. *Neaves*, 81 Fed. (2d) 947; *Commissioner* v. *Dyer*, 74 Fed. (2d) 685; and *Joseph E. Uihlein*, 30 B. T. A. 399; affd., *Commissioner* v. *Brumder*, 82 Fed. (2d) 944.

After carefully scrutinizing all the evidence, as we should because of the close personal and business relations of the parties to the sale of stock, *Joseph E. Uihlein, supra,* and cases cited; *Grace A. Cowan, Executrix,* 30 B. T. A. 296; affd., 88 Fed. (2d) 1007; *Harold E. Seymour,* 27 B. T. A. 403, and cases cited, we have found as facts that the Steamship Co. stock was sold by petitioner for the consideration of $90; that no inducement other than the transfer of the stock itself for that consideration was offered by petitioner to McRae, the purchaser of the stock; that no reimbursement was promised to be made or was ever made to McRae by petitioner; and that the loan of $100 made to McRae by petitioner had no relation to or bearing upon the sale of the stock. From such established facts we conclude that the sale of the Steamship Co. stock by petitioner to McRae was an actual sale made in good faith and that petitioner is entitled to the deduction of his loss thereon. The disallowance of the deduction of $8,910 as a capital net loss is therefore disapproved and as a necessary consequence the imposition of the fraud penalty by respondent is also disapproved.

The next question to be determined is whether the petitioners are entitled to a deduction in 1932 of the entire amount, principal and interest, paid in 1930 to 1932, inclusive, by the petitioner as endorser on his brother-in-law's note, or only so much thereof as was actually paid in 1932, the taxable year here involved. The respondent disallowed the deduction of $1,060 paid in 1930 and 1931 on such note and allowed only $175, the amount actually paid in 1932, as a deduction, upon the ground that, the return being made upon a cash receipts and disbursements basis, the amount actually paid in 1932 is deductible only in 1932.

It is contended by petitioners, in substance, that the payments made on the note by the petitioner as endorser constituted an obligation of the principal, McGavock, to the petitioner in the nature of a running account and that until the last payment of $175 in 1932 there

was no deductible bad debt because until such last payment, which discharged the entire indebtedness, was made by petitioner there existed no right of action on his part against the principal. In our opinion there is no merit in this contention.

The note was not introduced into evidence and it does not otherwise appear whether it was payable in installments or in one entire and indivisible amount, although it is indicated that it may have been payable in installments by the following question asked the petitioner and his response thereto: "Q. When were you first called upon to make any payments?" "A. When he failed to make a payment that was due."

If the note was payable in installments, as so indicated, petitioner, as endorser, was entitled under the statute laws of Alabama to commence an action against McGavock, the principal, immediately upon the payment by petitioner of any and each of the installments in 1930 and 1931 without waiting until the balance of the note had become due and been paid in 1932. Secs. 5721 and 9547, Code of Alabama, 1923.[1]

If, on the other hand, the note was not payable in installments the petitioner, as endorser, was nevertheless also entitled under the common law to commence an action against McGavock, the principal, immediately upon the payment by petitioner of any and each of the amounts paid by him in 1930 and 1931 without waiting until the entire amount of the note had been paid in 1932. Cf. *Boulware* v. *Robinson*, 8 Tex. 327; *Bullock* v. *Campbell*, 9 Gill (Md.), 182; *Minick* v. *Huff* (Nebr.), 59 N. W. 795; *Jefferson* v. *Century Savings Bank* (Iowa), 120 N. W. 308; *Faires* v. *Cockrill* (Texas), 88 Tex. 428. It was expressly provided in section 9545,[2] Code of Alabama, 1923, that the remedy of a surety prescribed by section 9547, *supra*, was not exclusive of other remedies existing at common law but was merely cumulative and additional thereto.

So, whether the note in question was payable in installments or in one entire indivisible amount, a right of action against the principal, McGavock, by petitioner as endorser arose immediately upon the payments by petitioner on the note in the years 1930 and 1931, respectively, and each payment therefore constituted a debt of the

---

[1] SECTION 5721. Suits for breach of contracts.—If a contract be entire, but one suit can be maintained for breach thereof; but if it be severable, or if the breaches occur at successive periods in an entire contract (as where money is to be paid by installments), an action will lie for each breach; but all the breaches occurring up to the commencement of the action must be included therein.

SECTION 9547. For money paid.—Payment by a surety or indorser of a debt past due, entitles him to proceed immediately against his principal for the sum paid, with interest thereon, and all legal costs to which he may have been subjected by the default of the principal.

[2] SECTION 9545. Remedies not exclusive.—The remedies given sureties and cosureties in this chapter are not exclusive of other remedies conferred by statute or existing at common law but are cumulative and additional.

principal to petitioner as endorser on the date it was made by petitioner as endorser. The evidence shows that McGavock was financially involved at the time the note was endorsed and he took over the hotel lease; that he made no money during the three or four months in which he operated the hotel; that at the time he discontinued the operation of the hotel he had no money or property of any kind and no employment; that thereafter he did not acquire any money or property, nor did he obtain any employment until very recently prior to the hearing; that he has never been able to reimburse the petitioner; that petitioner knew the financial condition of McGavock as disclosed by these facts and for that reason never made any effort to collect from McGavock, and that petitioner knew prior to 1932 that the debts of McGavock to him created by his payments, as endorser on the notes in 1930 and 1931, the amounts involved here, were worthless. It follows that the action of the respondent in allowing, as a deduction, only the amount paid by petitioner in 1932 must be approved. Cf. *Shiman* v. *Commissioner*, 60 Fed. (2d) 65.

*Decision will be entered under Rule 50.*